ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2007 OCT 26 AM 8: 25

CLERK _L. Flinders_
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

MICHAEL D. HOLLOWAY,                )
                                    )
            Petitioner,             )
                                    )
      v.                            )      CV 105-009
                                    )
MICHELLE MARTIN, Warden,            )
                                    )
            Respondent.             )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Petitioner Michael D. Holloway filed the captioned case pursuant to 28 U.S.C.

§ 2254. For the reasons stated below, the Court **REPORTS** and **RECOMMENDS** that the

petition for habeas corpus relief be **DENIED**, that this civil action be **CLOSED**, and that a

final judgment be **ENTERED** in favor of Respondent. The Court also **REPORTS** and

**RECOMMENDS** that Petitioner's motions for summary judgment be **DENIED**.[1]  (Doc.

nos. 34, 39).

---

[1]Petitioner's motions for summary judgment are little more than additional arguments
concerning his claims. As described herein, Petitioner is not entitled to habeas relief on any
of his claims, so his motions for summary judgment are likewise without merit.

## I. BACKGROUND

On September 29, 1998, a Richmond County grand jury indicted Petitioner on charges of aggravated assault and armed robbery. (Resp. Ex. 2, Attach 2,[2] p. 4). After a jury trial in the Superior Court of Richmond County, Petitioner was convicted on both charges and was sentenced to twenty (20) years of imprisonment for the aggravated assault and life imprisonment for the armed robbery. (Id. at 59-63).

Petitioner filed a motion for a new trial and an amendment to the motion asserting, *inter alia*, that his trial counsel was ineffective. (See id. at 64-65, 80-81). The trial court held a hearing on the motion for a new trial on December 28, 1999, at which Petitioner's trial counsel, Mr. Jeffery S. Bowman, testified. (Resp. Ex. 2, Attach 4). Petitioner was represented at the hearing by Mr. E. Ronald Garnett, Petitioner's counsel for the new trial motion and on appeal. (Id.). The trial court determined that Mr. Bowman rendered effective assistance in his representation of Petitioner and denied Petitioner's motion for a new trial on January 3, 2000. (Resp. Ex. 2, Attach 2, p. 82).

On direct appeal, Petitioner asserted that (1) there was insufficient evidence to support his convictions, (2) he was denied effective assistance of counsel because his trial counsel allegedly failed to contact and interview several alibi witnesses, and (3) the trial court erred by admitting certain statements which were allegedly made by Petitioner after he was arrested. (Resp. Ex. 2, Pet'r Appellate Brief); Holloway v. Georgia, 537 S.E.2d 708,

---

[2]"Attach 2" refers to the record submitted to the Georgia Court of Appeals, which was marked as Respondent's Exhibit 2 in the record submitted to the state habeas court. The Court will utilize an identical system of citation when referencing additional materials contained within the record which was submitted to the state habeas court, as these materials were not renumbered for the purposes of the instant action.

710-12 (Ga. App. 2000). Petitioner subsequently filed a *pro se* supplemental appellate brief, approximately two months after the state's responsive brief was submitted, setting forth an additional twelve (12) instances of alleged attorney error and asserting a number of trial court errors which were beyond the scope of his original appellate brief.[3] (Resp. Ex. 2, Pet'r Supp. Appellate Brief); Holloway, 537 S.E.2d at 712. Petitioner's arguments contained within his supplemental brief may be summarized as follows:

(1) The state failed satisfy its burden of proof regarding the use of a stun gun in the armed robbery;

(2) Petitioner was deprived of the effective assistance of trial counsel when:

(a) counsel failed to prepare and conduct an adequate investigation;

(b) counsel failed to contact and interview witnesses;

(c) counsel failed to obtain exculpatory evidence regarding Petitioner's medical condition;

(d) counsel failed to "meet the case of the prosecution," as evidenced by counsel's inconsistent questions;

(e) counsel failed to object to the prosecutor's improper comments and arguments;

(f) counsel failed to file the necessary written request to charge regarding the stun gun;

(g) counsel improperly introduced Petitioner's line-up photo into evidence;

(h) counsel failed to request appointment of a medical expert to testify regarding Petitioner's medical condition;

(i) counsel failed to secure a hearing on any pretrial motions;

(j) counsel failed to file necessary pretrial motions, including a motion to sever;

(k) counsel failed to object to prejudicial evidence and testimony; and

---

[3] Petitioner's supplemental brief was a verbatim typed version of a handwritten brief which was prepared by Petitioner and submitted to the Georgia Court of Appeals *pro se*. (Resp. Ex. 2, Pet'r Supp. Appellate Brief). Appellate counsel filed a typed copy of the supplemental brief at the express request of Petitioner and the Georgia Court of Appeals. (Id.).

(l) counsel told the court that he strongly advised Petitioner to accept the state's plea bargain, which revealed that counsel had no trial strategy;[4]
(3) The trial court erred when:

       (a) the court took on a prosecutorial role;

       (b) the court failed to clear the courtroom when it conducted the Jackson v. Denno[5] hearing;

       (c) the court gave an improper aggravated assault jury charge; and

       (d) the court allowed fatal variance with the indictment to occur regarding the type of weapon used in the armed robbery.

(See Resp. Ex. 2, Pet'r Supp. Appellate Brief).

The Georgia Court of Appeals rejected the arguments contained in Petitioner's original and supplemental brief and affirmed Petitioner's conviction and sentence on July 21, 2000.[6] Holloway, 537 S.E.2d at 713. The Georgia Supreme Court denied Petitioner's application for a writ of certiorari on February 16, 2001. Holloway v. Georgia, No. S00C2008 (Ga. Feb. 16, 2001). Petitioner then applied for a writ of certiorari to the United States Supreme Court, but that application was denied on October 1, 2001. Holloway v. Georgia, 534 U.S. 912 (2001).

Petitioner then filed a petition for a writ of habeas corpus in the Superior Court of Ware County on November 15, 2001. (Resp. Ex. 1, p. 6). Petitioner amended this petition on October 20, 2002. (See Resp. Ex. 5). The state habeas court held an evidentiary hearing

---

[4]Grounds (2)(k) and (2)(l) were listed at the end of Petitioner's supplemental brief but have been categorized with Petitioner's additional ineffective assistance of counsel claims.

[5]See Jackson v. Denno, 378 U.S. 368 (1964).

[6]Because the Georgia Court of Appeals did not grant Petitioner leave of court to file a supplemental brief, the supplemental brief was not filed in compliance with Ga. Ct. of App. R. 24 & 27. Holloway, 537 S.E.2d at 711. Nevertheless, the Georgia Court of Appeals reviewed all of the additional arguments contained within the supplemental brief despite specifically noting that it would not consider Petitioner's supplemental arguments regarding the alleged trial court errors. See id. at 711-13.

on November 20, 2002, during which Petitioner amended his petition for a second time orally. (See Resp. Ex. 2). Petitioner also attempted to raise additional claims in a brief which the state habeas court held was filed post-hearing. The state habeas court refused to consider these post-hearing claims. The claims that were ruled upon in the state habeas proceedings may be summarized as follows:

(1) Trial counsel was ineffective when counsel did not interview anyone, conduct research, investigate the case, or contact Petitioner's three alibi witnesses;

(2) Appellate counsel was ineffective when:

(a) counsel did nothing;

(b) counsel refused to communicate with Petitioner;

(c) counsel refused to involve Petitioner in his appeal;

(d) counsel gave Petitioner legal advice that was erroneous when he advised Petitioner that he could submit a *pro se* supplemental appellate brief;

(e) counsel failed to raise the issues Petitioner suggested in his October 29, 1999 letter;

(f) counsel did not submit his withdrawal from the case when Petitioner requested that he do so;

(g) counsel failed raise the fact that the co-worker at the pharmacy who wrote down the license tag number did not testify;

(h) counsel failed make an argument regarding severance of the charges;

(i) counsel failed to assert prosecutorial misconduct based upon the statement, "Mr. Holloway would have us believe";

(j) counsel failed to assert fatal variance between the indictment regarding the stun gun and the trial testimony that a pistol was used in the armed robbery;[7]

(3) Prosecutorial misconduct occurred when the state shifted the burden of proof by stating, "Mr. Holloway would have us believe";

(4) The trial court erred by:

(a) conducting a Jackson v. Denno hearing where only two of the three testifying officers were subject to challenge, and

(b) giving improper jury instructions which did not explain the elements of the crimes;

---

[7]Petitioner orally amended his petition at the evidentiary hearing to include grounds 2(e)-(j).

(5) His life sentence under the recidivist act is illegal because the punishment was based on an eighteen (18) year old Louisiana conviction;

(6) The trial court erred by failing to grant his motion for a continuance at the hearing on the motion for a new trial;

(7) Trial counsel was ineffective when he did not cross-examine Officer Langford;

(8) Trial counsel was ineffective when he did not present an expert witness to challenge the state's expert;

(9) Trial counsel was ineffective when he did not move for a pretrial hearing on the constitutionality of Petitioner's arrest;

(10) Trial counsel was ineffective when he did not introduce evidence of Petitioner's medical condition;

(11) Trial counsel was ineffective when he did not object at critical junctures throughout the trial;

(12) Trial counsel was ineffective when he failed to move for severance of the charges;

(13) Trial counsel was ineffective when he did not read and review his own notes of the preliminary hearing;

(14) Trial counsel was ineffective when he did not authenticate Investigator Gordon's claim of possession of an affidavit to document his testimony that victim Ware had identified Petitioner;

(15) Trial counsel was ineffective when he did not address the constructive amendment to the indictment and fatal variance that occurred in Petitioner's trial;

(16) Trial counsel was ineffective when he assumed that Petitioner was guilty, which created a conflict of interest;

(17) The trial court allowed numerous errors to occur during the trial, including constructive amendment to the indictment and fatal variance;

(18) Trial counsel was ineffective when he did not request that all of the trial proceedings be recorded;

(19) The trial court erred by allowing the prosecutor to constructively amend the indictment and introduce evidence that constituted fatal variance;

(20) Prosecutorial misconduct occurred when the prosecutor committed constructive amendment to the indictment and fatal variance;

(21) Prosecutorial misconduct occurred because the prosecutor allowed Investigator Gordon to introduce false testimony;

(22) Petitioner orally amended his claims at the evidentiary hearing to assert that trial counsel was ineffective when:

    (a) counsel did not subject Investigator Lynch to a Jackson v. Denno hearing;

    (b) counsel did not contest the issue when victim Ware said that he picked number 5 in a 5-photo array but the state said he picked number 4 in a 6-photo array;

(c) counsel did not talk to victims Ware and Manor before trial;

(d) counsel did not call Investigator Pinkston to testify to see if he would corroborate Investigator Bowen's testimony that Petitioner made a statement and/or was advised of his rights;

(e) counsel did not address that victim Manor said Petitioner used a pistol, victim Ware said it was a stun gun, and the responding officers indicated it was a pistol in their incident reports; thus, the state did not prove an element of the crime when it had indicted Petitioner for using a stun gun;

(f) counsel did not argue that Petitioner was on morphine when he made his statements;

(g) counsel did not inform Petitioner of a 10-year plea offer;

(h) counsel was unaware of what Investigator Lynch would testify to;

(i) counsel did not call Petitioner's doctor to testify; and

(j) counsel did not request a jury charge on the stun gun;

(23) Petitioner raised the following grounds in his post-hearing brief:

(a) Trial counsel was ineffective when he did not address that Officer Rogers did not testify, that his report was not provided in discovery, and that neither Officer Rogers or Officer Langford were subjected to pretrial review;

(b) Trial counsel was ineffective when he failed to assert that a stun gun is not *per se* a deadly weapon;

(c) Trial counsel was ineffective when he failed to object to leading questions;

(d) Trial counsel was ineffective when he failed to object to the aggravated assault jury charge;

(e) Appellate counsel was ineffective when he failed to correct Petitioner's supplemental brief, which caused "the Georgia Court of Appeals to be biased in its review";

(f) There was prosecutorial misconduct in that exculpatory evidence that victim Ware did not identify Petitioner as her attacker was withheld;

(g) There was prosecutorial misconduct in that discovery was missing from Officers Langford's and Lynch's reports, including the affidavit regarding victim Ware's identification of Petitioner, photos of the palm print, notice that Ms. Womack identified Petitioner in a photo array, and the complete officer incident reports;

(h) There was prosecutorial misconduct in that the prosecutor planted facts in the jury's mind;

(i) The trial court erred when the court told the jurors that they could stay for the Jackson v. Denno hearing;

(j) The trial court erred when the court admitted statements from the four arresting officers when they did not corroborate each other, and the court did not make the detailed findings recommended by the bench book;

7

(k) There was prosecutorial misconduct in that the court's jury instruction broadened the definition of a weapon to an "offensive weapon or replica or device having the appearance of such weapon"; and

(l) There was trial court misconduct in that victim Ware said nothing about intent to rob, creating a variance with the indictment.

(See Resp. Exs. 2, 3, 5, 6).

The state habeas court denied the petition on July 17, 2003. (See Resp. Exs. 3 & 6).[8] The Georgia Supreme Court denied Petitioner's application for a certificate of probable cause to appeal ("CPC") the state habeas court's ruling on April 27, 2004, holding that Petitioner's CPC application was untimely. (See Resp. Ex. 4). On June 4, 2004, the Georgia Supreme Court denied Petitioner's motion for reconsideration. (Id.). Petitioner's second motion for reconsideration was denied by the Georgia Supreme Court on July 12, 2004. (Id.).

Petitioner then filed his initial § 2254 petition on January 21, 2005.[9] (Doc. no. 1).

_____

[8] After observing that pages twenty (20) and twenty-five (25) of the state habeas court's July 17, 2003 decision, as well Petitioner's October 30, 2002 amended state habeas corpus petition, had been omitted from Respondent's exhibits, the Court directed Respondent to supplement the record. (Doc. no. 38). In response to the Court's August 29, 2007 Order, Respondent submitted Exhibits 5 & 6. However, Respondent's Exhibit 6, purportedly a complete copy of the state habeas court's July 17, 2003 decision, does not contain pages thirteen (13) and fourteen (14). Despite this omission, Respondent's Exhibits 3 & 6, when read together, provide a complete copy of the state habeas court's July 17th decision.

[9] "This Court must give 'due deference' to the Georgia Supreme Court's procedural determination that the CPC was untimely, and thus, that the CPC application was not 'properly filed' under § 2244(d)(2) and did not toll [the Antiterrorism and Effective Death Penalty Act of 1996's] limitation period." Wade v. Battle, 379 F.3d 1254, 1260 (11th Cir. 2004) (citing Stafford v. Thompson, 328 F.3d 1302, 1305 (11th Cir. 2003)). As such, Petitioner's state habeas petition only remained "pending" under § 2244(d)(2) until approximately August 17, 2003, thirty days following the state habeas court's decision, pursuant to O.C.G.A. § 9-14-52(b). See id. at 1262. Therefore, Petitioner's January 21, 2005 federal petition was filed outside of § 2254's one-year statute of limitations period. See 28 U.S.C. § 2244(d). Additionally, irrespective of the timeliness of the § 2254 petition, in order to properly exhaust state court remedies, a Georgia inmate must timely file an application for a CPC following the denial of his state habeas petition. See Pope v. Rich,

8

On May 26, 2006, the Honorable Dudley H. Bowen, Jr., United States District Judge, denied the petition. (Doc. no. 16). However, on January 16, 2007, the Court of Appeals reversed the decision of the District Court and remanded the case after determining that the claims raised in the petition were unclear. (Doc. no. 22). Upon remand, Judge Bowen instructed Petitioner to amend his petition and state each of his claims clearly and succinctly. (Doc. no. 25). Petitioner filed an amended petition (doc. no. 38), to which Respondent has filed a response (doc. nos. 31, 32).

In his amended federal petition, Petitioner argues:

(1) Trial counsel rendered ineffective assistance when:

    (a) counsel never interviewed anyone involved with the case including:

        (i) Petitioner;

        (ii) alibi witnesses; and

        (iii) the two victims;

    (b) counsel failed to properly investigate the facts contained within the state's discovery package and discover Investigator Lynch's claims that Petitioner made an inculpatory statement in his presence;

    (c) counsel failed to adequately challenge Deputy Langford's testimony;

    (d) counsel failed to adequately investigate exculpatory medical evidence;

    (e) counsel failed to read the state's discovery package;

    (f) counsel failed to convey a ten (10) year plea deal to Petitioner;

    (g) counsel failed to challenge the no-knock entry, warrantless search, and illegal arrest;

    (h) counsel failed to object to the prosecutor's unconstitutional actions;

---

358 F.3d 852, 854 (11th Cir. 2004). Because Petitioner failed to timely file a CPC, any claims not previously exhausted on direct appeal could be procedurally barred in federal habeas proceedings. Id. However, Respondent failed to raise either of these defenses and, although it could, the Court will not *sua sponte* deny or dismiss Petitioner's claims solely on these grounds. See Day v. McDonough, 547 U.S. 198, 209 (2006) (holding that courts are permitted to consider, *sua sponte*, the timeliness of a habeas petition as well failure to exhaust state remedies, procedural bars, and non-retroactivity).

(i) counsel failed to obtain phone records that would have supported Petitioner's alibi;

(j) counsel failed to properly impeach Investigator Gordon and the clerk at the pharmacy;

(k) counsel failed to raise constructive amendment to the indictment and fatal variance with regard to the weapon used to commit the crimes; and

(l) counsel failed to request that all the trial proceedings be recorded;

(2) Appellate counsel rendered ineffective assistance when:

(a) counsel refused to communicate with Petitioner;

(b) counsel failed to contact Petitioner's alibi witnesses; and

(c) counsel failed to research or investigate the constructive amendment to the indictment and fatal variance issue;

(3) The prosecutor committed unconstitutional errors when:

(a) the prosecutor withheld exculpatory evidence;

(b) the prosecutor "planted" facts in the jurors' minds which were never substantiated; and

(c) the prosecutor committed constructive amendment to the indictment and fatal variance;

(4) The trial court committed errors when:

(a) the trial court took on a prosecutorial role;

(b) the trial court allowed constructive amendment to the indictment and fatal variance to occur;

(c) the trial court conducted an unconstitutional Janckon v. Denno hearing because only two of the five arresting officers testified and the trial court told the jurors that they could stay for the hearing;

(d) the trial court denied Petitioner's motion for a continuance at the motion for a new trial hearing; and

(e) the trial court imposed an illegal sentence.[10]

_____

[10]The Court does not attempt to describe the claims brought in the amended petition in exhaustive detail, but rather provides an accurate summary of Petitioner's arguments. The Court is aware of its obligation to consider all of Petitioner's claims, see Clisby v. Jones, 960 F.2d 925, 936 (11th Cir. 1992) (en banc); nevertheless, the Court has no duty to address explicitly every nuance of Petitioner's claims. It suffices to say that any arguments not explicitly declaimed or discussed herein have been duly considered and rejected. See United States v. Northside Realty Assoc., 474 F.2d 1164, 1170 n.5 (5th Cir. 1972) ("Courts need not indulge in exegetics, or parse or declaim every fact and each nuance or hypothesis . . . failure to mention each and every specific item . . . in no way indicates that they were not considered.") (citations omitted); see also White v. United States, 175 Fed. Appx. 292, 294 (11th Cir. Apr. 6, 2006) (noting that Clisby does not forbid summary denial of meritless claims) (quoting Broadwater v. United States, 292 F.3d 1302, 1303 (11th Cir. 2002)); Miller v. United States, 131 Fed. Appx. 161, 163 (11th Cir. Apr. 29, 2005) (noting that Clisby does not require district court "to comment on all of the evidence presented in support of [a

(See doc. no. 28). The Court resolves the matter as follows.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), signed into

law on April 24, 1996, amended § 2254(d) to provide:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court addressed Section 2254(d) in Brown v. Payton, 544

U.S. 133 (2005). The Supreme Court has explained the difference between the "contrary to"

and "unreasonable application" clauses in § 2254(d)(1) as follows:

> The AEDPA provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

petitioner's] claim.").

11

Id. at 141 (internal citations omitted). Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is "incorrect or erroneous"; only a showing that the decision was "objectively unreasonable" will entitle a petitioner to relief. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003). In sum, a habeas petition may be granted if "the state court's decision was contrary to, or involved an objectively unreasonable application of, the governing Federal law set forth by Supreme Court cases." McIntyre v. Williams, 216 F.3d 1254, 1257 (11th Cir. 2000).

Moreover, the AEDPA sets a highly deferential standard of review for state court factual determinations. The AEDPA "requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" Schriro v. Landrigan, 550 U.S. ___, 127 S. Ct. 1933, 1939-40 (2007) (quoting 28 U.S.C. § 2254(e)(1)); see also Crawford v. Head, 311 F.3d 1288, 1317 (11th Cir. 2002) (affirming state court factual determination "because there is support for it in the record and [the petitioner] has not rebutted the finding by clear and convincing evidence"). Thus, "some evidence suggesting the possibility" that a petitioner's version of the pertinent facts is correct is not sufficient to carry the burden of showing that a state court made an unreasonable determination of fact as contemplated by § 2254(d)(2). Bottoson v. Moore, 234 F.3d 526, 540 (11th Cir. 2000). If the record provides any support for a state court's factual findings, this Court may not set aside those findings unless and until they are rebutted by clear and convincing evidence. Crawford, 311 F.3d at 1317.

12

### III. DISCUSSION

#### A. Procedurally Defaulted and Unexhausted Claims

##### 1. Exhaustion and Procedural Default Rules Explained

The AEDPA preserves the traditional exhaustion requirement, which requires a district court to dismiss habeas claims that the petitioner has a right to raise, by any available procedure, in state court. 28 U.S.C. § 2254(b)(1)(A) & (c). "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by *any* available procedure, the question presented." Id. § 2254(c) (emphasis added). In reference to this requirement, the Supreme Court has held that a state inmate is deemed to have exhausted his state judicial remedies when he has given the state courts, or they have otherwise had, a fair opportunity to address the state inmate's federal claims. Castille v. Peoples, 489 U.S. 346, 351 (1989). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). This requirement applies with equal force to all constitutional claims.

As the Eleventh Circuit has explained, "[a] state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts." Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). The exhaustion requirement applies with equal force to all constitutional claims, including claims of ineffective assistance of counsel. Footman v. Singletary, 978 F.2d 1207, 1211 (11th Cir. 1992) ("[A] habeas petitioner may not present instances of ineffective assistance of counsel in his federal petition that the state court has not evaluated previously."). Furthermore, a

petitioner's failure to exhaust his claims properly ripens into a procedural default once state remedies are no longer available. McNair v. Campbell, 416 F.3d 1291, 1305 (11th Cir. 2005) ("It is well established that when a petitioner has failed to exhaust his claim by failing to fairly present it to the state courts and the state court remedy is no longer available, the failure also constitutes a procedural bar.").

A federal habeas petitioner can run afoul of procedural default rules in one of two ways. First, a federal habeas petitioner can improperly attempt to revive an old claim that a state court has previously denied on procedural grounds. When a state court denies a constitutional claim on "adequate and independent"[11] state procedural grounds, the district court is precluded from later reviewing the merits of the claim on collateral attack. Judd, 250 F.3d at 1313.

Likewise, a federal habeas petitioner runs afoul of procedural default rules when he attempts to bring a new claim that would be procedurally barred if he attempted to raise it in state court. In such instances, the petitioner's failure to bring the claim properly in state

---

[11]A state court decision rests upon "adequate and independent" state procedural grounds when it satisfies the following three-part test:

First, the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim. Secondly, the state court's decision must rest solidly on state law grounds, and may not be intertwined with an interpretation of federal law. Finally, the state rule must be adequate, i.e., it must not be applied in an arbitrary or unprecedented fashion. The state court's procedural rule cannot be "manifestly unfair" in its treatment of the petitioner's federal constitutional claim to be considered adequate for the purposes of the procedural default doctrine.

Judd, 250 F.3d at 1313 (internal quotations and citations omitted).

14

court has "matured into a procedural default." Smith v. Jones, 256 F.3d 1135, 1139 (11th Cir. 2001). Thus, where a state procedural bar is apparent, a court "can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998); see also Harris v. Reed, 489 U.S. 255, 263 n.9 (1989) ("[A] federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."). Simply put, if a claim has not been "fairly presented in the state courts, it is procedurally defaulted." Jones v. Campbell, 436 F.3d 1285, 1304 (11th Cir. 2006).

Of note here, under Georgia law, absent a showing of cause to excuse the default and actual prejudice, the failure to object at trial or to raise on direct appeal any alleged error creates a procedural bar to its consideration in a habeas corpus proceeding. See O.C.G.A. § 9-14-48(d); Black v. Hardin, 336 S.E.2d 754, 755 (Ga. 1985) ("The rule now may be stated as follows: a failure to make timely objection to *any* alleged error or deficiency or to pursue the same on appeal ordinarily will preclude review by writ of habeas corpus."). Georgia law also requires that claims of ineffective assistance of trial counsel be raised at the "earliest practicable moment" by new counsel, or absent a showing of cause and prejudice, the claims are procedurally defaulted. White v. Kelso, 401 S.E.2d 733, 734 (Ga. 1991); Thompson v. State, 359 S.E.2d 664, 665 (Ga. 1987).

Also of note, Georgia law requires state habeas petitioners to raise all available grounds for relief in a first or amended habeas petition. See O.C.G.A. § 9-14-51. Under § 9-14-51, a second or successive Georgia state habeas petition is procedurally barred unless a

15

state habeas judge concludes that the grounds cited in the petition could not have been raised in the original petition. See id. The Eleventh Circuit has held that Georgia's successive petition statute should be enforced by federal courts "unless there is some indication that a state court judge would find the claims in question could not reasonably have been raised in the original or amended petition." Chambers v. Thompson, 150 F.3d 1324, 1327 (11th Cir. 1998).

Of course, the Eleventh Circuit has explained that a procedural default may be excused if certain conditions are met:

> A petitioner may obtain federal review of a procedurally defaulted claim if he can show both cause for the default and actual prejudice resulting from the default. Additionally, in extraordinary cases, a federal court may grant a habeas petition without a showing of cause and prejudice to correct a fundamental miscarriage of justice.

Jones, 436 F.3d at 1304 (internal citations omitted). Cause entails a showing "that some objective factor external to the defense impeded" efforts to comply with the state procedural rule. Coleman v. Thompson, 501 U.S. 722, 753 (1991). A state petitioner may also demonstrate cause to overcome a procedural default by demonstrating that he received constitutionally ineffective assistance of counsel. Turpin v. Todd, 493 S.E.2d 900, 906 (Ga. 1997). The narrow fundamental miscarriage of justice exception, on the other hand, encompasses the extraordinary instance in which a constitutional violation probably has resulted in the conviction of one actually innocent of the crime. Murray v. Carrier, 477 U.S. 478, 496 (1986).

16

### 2. Defaulted Claims

The state habeas court concluded that Petitioner had defaulted claims (3)(c), (4)(b), (4)(d), and (4)(e) now raised in his amended federal habeas petition by failing to raise these claims at trial or on direct appeal, and that Petitioner had defaulted claims (1)(a)(iii), (1)(c), (1)(f), (1)(g), (1)(k), (1)(l) by failing to raise these claims in the motion for a new trial - the first possible stage of post-conviction review - and on direct appeal as required by O.C.G.A. § 9-14-48(d) and Black, 336 S.E.2d at 755. (Resp. Exs. 3 & 6, pp. 18-22 (citing White, 401 S.E.2d at 734)). Additionally, the court concluded that Petitioner had not demonstrated cause and prejudice to overcome the procedural default. (See id. (citing Turpin, 493 S.E.2d at 906)). Respondent contends that this Court should defer to the state court's ruling and decline to address these claims on the merits. (Doc. no. 32, pp. 11-13, 23-26).

The procedural default rule relied upon by the state court constitutes an independent and adequate state procedural ground in that it is exclusively a state doctrine and it is regularly applied by Georgia habeas courts. See Hightower v. Scofield, 365 F.3d 1008, 1037 (11th Cir. 2004). Thus, this Court is barred from considering the claims unless Petitioner can show cause and prejudice sufficient to overcome his default.

Petitioner contends that the Court should excuse his default because he attempted to rid himself of his appointed appellate counsel. (Doc. no. 33, p. 24). The Court must reject Petitioner's argument. The trial judge determined that Petitioner had not presented sufficient justification to necessitate the appointment of new counsel (see Resp. Ex. 2, pp. 91-102), and the fact that Petitioner unsuccessfully attempted to obtain replacement counsel does not equate to a showing of cause and prejudice. As such, the Court will limit its consideration

to those claims which were considered and denied on the merits by the Georgia courts, and Petitioner's defaulted claims (1)(a)(iii), (1)(c), (1)(f), (1)(g), (1)(k), (1)(l), (3)(c), (4)(b), (4)(d), and (4)(e) should be denied.

### 3. Unexhausted Claims Now Procedurally Defaulted

Petitioner also asserts several new claims which were never exhausted in the Georgia courts. As the state habeas court observed, Petitioner improperly attempted to raise claim (3)(a), that the prosecutor withheld exculpatory evidence, and claim (3)(b), that the prosecutor "planted" facts in the jurors' mind, because these grounds were raised post-hearing which precluded the state from presenting evidence in response, as it is entitled to do. (See Resp. Exs. 3 & 6, pp. 24-25). Moreover, Petitioner never raised and properly exhausted claims (1)(i), regarding trial counsel's failure to obtain certain phone records, and claim (1)(j), regarding trial counsel's failure to properly impeach Investigator Gordon and the clerk at the pharmacy in the state courts.

Claims (3)(a), (3)(b), (1)(i) and (1)(j) in Petitioner's amended federal petition have not been previously exhausted in the state courts and appear to be otherwise procedurally defaulted under Georgia's procedural default rule as explained *supra*. Additionally, Petitioner has not shown cause to excuse his failure to properly raise these claims in the state courts. Accordingly, these claims should be denied.

### B. Claims Rejected on Direct Appeal

As set forth *supra*, Petitioner filed a motion for a new trial in which he asserted, *inter alia*, that his trial counsel was ineffective. The trial court held a hearing on Petitioner's motion at which Petitioner's trial counsel testified. The trial court subsequently denied the

18

motion. (Resp. Ex. 2, Attach 4). The state appellate court, after noting that "trial counsel in the present case has been an attorney for thirteen (13) years, has handled over 1,000 felony cases, and has conducted between 70-80 trials," considered and rejected each of Petitioner's ineffective assistance of trial counsel claims which were appealed to that court.[12] Holloway, 537 S.E.2d at 711. Petitioner reasserts several of these claims in his amended federal petition. Namely, Petitioner reasserts claims (1)(a)(ii), (1)(b), (1)(d), (1)(e), and (1)(h). Petitioner also reasserts appealed claim (4)(a), that the trial court took on a "prosecutorial role" during the trial, and claim (4)(c), that the trial court conducted an unconstitutional Jackson v. Denno hearing because only two of the five arresting officers testified and the jurors were told that they could stay for the hearing.

To make out a claim for ineffective assistance of counsel, Petitioner must first show that "counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984). Second, he must show that he suffered such prejudice that, but for his counsel's errors, there is a reasonable probability that the results of the proceeding would have been different. Id, at 694.

---

[12]Before considering Petitioner's ineffective assistance of trial counsel claims, the appellate court cited Anderson v. State, 515 S.E.2d 195, 197 (Ga. App. 1999), a case in which that court articulated and applied the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984):

> To be successful with [his] claims of ineffectiveness of trial counsel, [Anderson] must demonstrate that [his] attorney's performance was deficient and that the deficiency prejudiced [his] defense. [He] must overcome the strong presumption that counsel's performance was within a wide range of professional conduct and that counsel's decisions were the result of reasonable professional judgment, the reasonableness of which is viewed at the time of trial and under the particular circumstances of the case.

19

The facts of Strickland, however, are dissimilar from those presented here. Moreover, it cannot be said that the result reached by appellate court was contrary to clearly established federal law. Thus, the Court will focus its attention on whether the appellate court unreasonably applied Strickland to the facts of this case. Bell v. Cone, 535 U.S. 685, 699 (2002) ("[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Rather, [the petitioner] must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner." Id. (internal citations omitted)).

With regard to the performance prong of Strickland, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion - though the presumption is not insurmountable - is a heavy one." Fugate, 261 F.3d at 1217 (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as counsel acted . . . ." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."

20

Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice prong of Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). As the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (internal quotation and citation omitted).

Along with these basic principles concerning ineffective assistance of counsel claims, the Court must also consider the facts underlying Petitioner's conviction. The facts underlying Petitioner's conviction are set forth in the Georgia Court of Appeals decision and, pursuant to § 2254(e)(1), are presumed to be correct. Viewing the facts in a light most favorable to the verdict, the Georgia Court of Appeals determined:

> [T]he victim of the aggravated assault was returning to his van after making a bank deposit when Holloway approached him and asked if he had dropped a phone card. The victim responded that he did not drop a phone card and started to get in the van when Holloway attacked him with a stun gun. The victim escaped, and Holloway walked into a wooded area behind the bank. When shown a photographic lineup, the victim identified Holloway as his attacker.
>
> The victim of the armed robbery testified that she cashed a check at the same bank on the same day and drove into the parking lot of a pharmacy located directly across the street from the bank. As she walked from her car

21

to the pharmacy, she was approached by a white male who pulled a pistol, told her it was a robbery, and forced her to return to her car. The victim took $200 from her purse and gave it to the robber, who then walked away on a dirt road behind the pharmacy. The victim was unable to identify the robber.

A clerk at the pharmacy saw a man pull into the parking lot in a car, get out, lean against his car, and look across the street toward the bank. She became suspicious when the man did not enter the pharmacy building or the insurance company next door. She wrote down the car's tag number. She then saw the man walk toward the bank, lean against a truck in the bank parking lot, return to his car, and drive off. Holloway's palm print was found on the truck in the area described by the clerk. A few minutes later, she saw the woman who was the victim of the armed robbery drive into the pharmacy parking lot. She observed the same man talking with this woman, saw him lean into her car, stand back up with money in his hand, and then walk away. The clerk yelled at the man to stop bothering customers, and he ran. The clerk then learned that the woman had been robbed.

The clerk gave police a detailed description of the robber's physical features and clothing, but later was unable to identify him. However, the tag number she had taken down was registered to Holloway.

Holloway, 537 S.E.2d at 710. The appellate court observed, based upon the above facts, that "there was overwhelming direct and circumstantial evidence linking Holloway to the crime[s]. . . . Moreover, an investigator testified that Holloway told him, upon being arrested, 'he [knew] how he got caught; that the lady at the pharmacy got his tag number.' [These statements provide additional support for] Holloway's conviction for armed robbery." Id. at 711.

With regard to each of Petitioner's ineffective assistance claims, the appellate court did not find that counsel performed ineffectively in pursuing the defense of Petitioner's case or that Petitioner could show that he was prejudiced by any alleged ineffective assistance.

22

### 1. Claim (1)(a)(ii) - Failure to Interview Alibi Witnesses

The state appellate court addressed Petitioner's claim that trial counsel failed to contact and interview potential witnesses. The appellate court noted that Petitioner "failed to produce any of these alleged alibi witnesses and failed to make any showing of the substance of the testimony of any uncalled witness." Id. The court concluded that "[w]ithout any such evidence in the record, it is impossible for this Court to conclude that any witnesses who were not called would have given testimony favorable to [Petitioner] and that the result of the proceedings would have been affected." Id.

In the instant petition, Petitioner lists three alibi witnesses - Tamara Warhurst, George Cato, and Melvin Chris Miller - who he claims would have benefitted his defense. (Doc. no. 26, pp. 8-9). Although Petitioner presents his opinion as to the exculpatory testimony that these witnesses would have provided on his behalf, these assertions are unsupported by the record.[13] As such, Petitioner's ineffective assistance of counsel claim for failing to interview alibi witnesses fails.

### 2. Claim (1)(b) - Failure to Discover Investigator Lynch's Claims that Petitioner Made an Inculpatory Statement and Claim (1)(e) - Failure to Read the State's Discovery Package

Regarding Petitioner's contention that his trial counsel failed to properly prepare for trial, the state appellate court credited trial counsel's testimony that he spent "a lot of time reading the discovery material . . . [but] that the preliminary hearing showed the strength of

---

[13]This reasoning is equally applicable to defaulted claim (1)(i), regarding the failure of counsel to investigate alleged exculpatory phone records. Petitioner's *post-hoc* assertions regarding the exculpatory nature of these documents are unavailing, and this claim also fails on the merits.

23

the evidence against [Petitioner]. . . . [Trial counsel] 'practically begged' [Petitioner] to take a favorable plea offer since the evidence was so strong and [Petitioner] was in such jeopardy with the 'two strikes and you're out' law." Id. at 711-12. The court concluded that "trial counsel presented an adequate defense given the facts of the case." Id. at 712. Regarding trial counsel's alleged failure to challenge the testimony of Investigator Lynch, the court observed that Petitioner "failed to provide any evidence supporting this allegation, and trial counsel stated he read the discovery material and knew what all the testimony was going to be." Id. Petitioner has not presented any reason to suppose that the appellate court's decision was an unreasonable application of Supreme Court precedent with respect to these claims.

### 3. Claim (1)(d) - Failure to Adequately Investigate Exculpatory Medical Evidence

The appellate court found that Petitioner's "argument that trial counsel failed to obtain exculpatory material is . . . unsupported by any showing of how [Petitioner's] medical records would have provided exculpatory evidence and would have affected the result of the proceedings." Id. Presently, Petitioner contends that his physician, Dr. Sloan, could have testified to his physical limitations and should have been contacted by trial counsel. Petitioner's conclusory statement, which is unsupported by the record, is insufficient to undermine the state appellate court's decision, and this claim should be denied.

### 4. Claim 1(h) - Failure to Object to the Prosecutor's Unconstitutional Actions

In addressing trial counsel's alleged failure to object "at critical junctures" of the trial, the appellate court noted that Petitioner only cited one instance at which his trial counsel

24

should have objected, that he did not directly reference the instance in the record, and that he failed to show how the question was improper or prejudicial. Id. at 714. In the instant petition, Petitioner expands this claim, citing to the trial transcript at pages 24-25, 36, 65, 67, 135, 137, and 191 and alleging that trial counsel was ineffective by "sitting m[ute] as the prosecutor led witnesses, planted facts, and committed constructive amendment/fatal variance." (Doc. no. 28, p. 8). As noted above, Petitioner cannot present claims in this Court which were not previously raised and exhausted in the state courts. In any event, the Court has reviewed the portions of the record cited by Petitioner and determined that Petitioner's arguments lack merit, and therefore Petitioner cannot establish that he was prejudiced by the alleged errors.

### 5. Claim (4)(a) - The Trial Court Took on a Prosecutorial Role

Petitioner alleges that the trial court shed its role of impartiality and took on the role of the prosecutor when it interrupted and interfered with trial counsel, answered for witnesses, and assisted the prosecutor's case. Petitioner cites to the trial transcript at pages 33, 51, 52, 53, 60, 74, 76, and 81 in support of this claim. With regard to these contentions, and Petitioner's claim that these actions violated state law, the appellate court held that Petitioner's claim "lack[ed] merit." Holloway, 537 S.E.2d at 713. Petitioner now expands on the claim which was brought before the appellate court by also alleging that the trial court erred by failing to "eyeball" the alleged affidavit Investigator Gordon possessed and that the trial court's errors prevented Petitioner from receiving a "constitutionally proper" trial. (Doc. no. 28, p. 26).

25

A federal habeas court may entertain an application for a writ of habeas corpus only on the ground that the petitioner is in custody in violation of the United States Constitution, a treaty, or the laws of the United States. Estelle v. McGuire, 502 U.S. 62, 68 (1991). A federal court is not concerned with a state's interpretation of its own laws and rules unless the violations raise federal constitutional problems; such matters are of state concern. McCullough v. Singletary, 967 F.2d 530, 535-36 (11th Cir. 1992); see also Dorsey v. Chapman, 262 F.3d 1181, 1190 n.11 (11th Cir. 2001) ("[F]ederal habeas relief does not include the review of state court application of state procedural rules that do not rise to the level of constitutional violations."). Stated otherwise, a federal habeas court is not a "'super' state supreme court" available to grant relief every time it believes a state court erred. Shaw v. Boney, 695 F.2d 528, 530 (11th Cir. 1983) (per curiam) (quoting Meyer v. Estelle, 621 F.2d 769, 771 (5th Cir. 1980)).

Petitioner's arguments relate to the trial court's application of state rules of evidence, which are not a matters on which this Court can grant relief. Moreover, upon review of the trial transcript, Petitioner has not presented any trial court errors which were contrary to, or involved an unreasonable application of, clearly established federal law. As such, Petition is not entitled to federal habeas relief on this ground.

### 6. Claim (4)(c) - The Trial Court Conducted an Unconstitutional Jackson v. Denno Hearing Because Only Two of the Five Arresting Officers Testified and the Jurors Were Told That They Could Stay for the Hearing

The trial court conducted a Jackson v. Denno hearing to determine the admissibility of certain in-custody statements which were made by Petitioner. After reviewing the transcript of the Jackson v. Denno hearing, the appellate court determined that there was no

error in the trial court's determination that Petitioner's statements were admissible. Holloway, 537 S.E.2d at 713. The appellate court summarily denied Petitioner's argument that the trial court told the jurors that they could stay for the hearing. Petitioner's argument that the hearing was improper because not all of the arresting officers testified was never presented to the appellate court.

Petitioner's arguments regarding the Jackson v. Denno hearing lack merit. The trial transcript reveals that the court dismissed the jury for lunch by stating: "I'm going to let y'all go, and I'll see y'all back about 2:15, okay. Thank you. All rise and let the jury go out." (Resp. Ex. 2, Attach 3, p. 81). The court then stated, "[W]e are going to take up something with the lawyers now. Y'all can have a seat, or stay, or go, whatever you want to do." (Id.). The transcript does not indicate that the trial court was addressing the jury when this comment was made, and presuming that such a statement was made to the jurors would be completely illogical because the jury had just been dismissed. Moreover, other than Petitioner's self-serving allegation, nothing in the record indicates that jurors remained in the courtroom during the hearing.

Furthermore, Petitioner's argument regarding the fact that not every arresting officer testified at the Jackson v. Denno hearing fails. Simply because these officers may have also overheard Petitioner's in-custody statements does not mean that the trial judge was required to elicit testimony from them at the Jackson v. Denno hearing before concluding that the in-custody statements were admissible.

In sum, Petitioner provides no reason to suppose that the decision of the Georgia Court of Appeals regarding any of his previously rejected claims was contrary to or an

27

unreasonable application of Supreme Court precedent. Furthermore, the Court finds the state appellate court's evaluation of Petitioner's claims to be neither contrary to nor an unreasonable application of clearly established federal law. Accordingly, claims (1)(a)(ii), (1)(b), (1)(d), (1)(e), (1)(h), (4)(a), and (4)(c) should be denied.

## C. Ineffective Assistance of Appellate Counsel

In claims (2)(a)-(c), Petitioner asserts that his appellate counsel was ineffective. The Supreme Court has held that the Strickland standard applies to claims of ineffective assistance of appellate counsel. Murray v. Carrier, 477 U.S. 478, 488 (1986); Smith v. Murray, 477 U.S. 527, 535-36 (1986). In Jones v. Barnes, 463 U.S. 745 (1983), however, the Court held that the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue. Effective appellate counsel should "'winnow out' weaker arguments even though the weaker arguments may be meritorious." Id. at 751-52.

Before addressing Petitioner's complaints of ineffective assistance of appellate counsel, the state habeas court observed:

> Ron Garnett represented Petitioner in his motion for a new trial and appeal. (HT 78). Counsel received his law degree from Indiana University and is licensed to practice law in Indiana and Georgia.[14] (HT 119). He began his practice in Augusta, Georgia, in 1982 and handles mostly trial work and a substantial number of appeals in that circuit. (HT 119). Counsel has handled 50-100 criminal appeals in the last three to four years. (HT 119).

(Resp. Exs. 3 & 6, p. 3).

---

[14]On September 27, 2004, Mr. Garnett was disbarred from the practice of law in the State of Georgia. In re Garnett, 603 S.E.2d 281, 283 (Ga. 2004).

28

### 1. Claim (2)(a) - Counsel Failed to Communicate with Petitioner

Petitioner claims that his appellate counsel rendered ineffective assistance when counsel refused to communicate with him. However, the state habeas court determined:

> Prior to the motion for new trial hearing, counsel wrote to Petitioner to inform him that he had been appointed to the case and to ask[] Petitioner to write back advising counsel of any issues Petitioner wanted raised [in] the motion for new trial. (HT 78). The trial court would not order Petitioner returned to the county jail [until] two weeks before the hearing, because convicted prisoners, who were returned to the jail significantly earlier than their hearings, were causing problems. (HT 79-80). Based on some of the letters Petitioner sent and discussions with Petitioner, counsel amended the motion for new trial to include claims of ineffective assistance of trial counsel. (HT 81).

. . . .

> [A]ppellate counsel only received the trial transcript shortly before the hearing on the motion for new trial. He read the transcript and met with Petitioner immediately prior to the hearing. In that discussion [they] reviewed the issues that would be raised at the motion for new trial hearing. During that hearing, Petitioner was personally allowed to question trial counsel extensively. By letter, [a]ppellate counsel also asked Petitioner to suggest any issues that he thought should be raised in the appeal. Counsel reviewed and researched the issues Petitioner suggested, but determined that it would be better to only raise in the appeal issues that had a chance of getting Petitioner's convictions reversed.

(Resp. Exs. 3 & 6, pp. 3, 11).

Although Petitioner asserts that appellate counsel failed to communicate with him, the record does not support this contention. Appellate counsel communicated with Petitioner through letters and met with him on at least one occasion prior to the hearing on the motion for a new trial. Furthermore, Petitioner has not shown that the outcome of the appeal would have been different had Petitioner been afforded more interaction with appellate counsel.

This reasoning is equally applicable to Petitioner's claim (1)(a)(i), regarding trial counsel's alleged failure to interview him prior to trial. As noted *supra*, the state appellate court, after reviewing the transcript of the motion for a new trial hearing and the trial transcript, held that trial counsel adequately prepared for the case and presented an adequate defense, given the circumstances. Holloway, 537 S.E.2d at 711-12. The record reflects that Petitioner did have some interaction with trial counsel prior to trial, and Petitioner has not show any resultant prejudice based upon his claim that trial counsel failed to properly interview him prior to trial.

### 2. Claim (2)(b) - Counsel Failed to Contact Petitioner's Alibi Witnesses

The state habeas court observed that "[a]ppellate counsel did argue that trial counsel was ineffective for not interviewing the alleged alibi witnesses, but the Court of Appeals found that argument to be without merit." (Resp. Exs. 3 & 6, pp. 15-16). The state habeas court deferred to the appellate court's decision, and denied Petitioner's claim. For the reasons set forth above at § III(B)(1) regarding trial counsel's alleged failure to contact alibi witnesses, Petitioner's claim regarding appellate counsel's failure to contact supposed alibi witnesses should also be denied.

### 3. Claim (2)(c) - Counsel Failed to Research or Investigate Constructive Amendment to the Indictment and Fatal Variance

With regard to Petitioner's claim of ineffective assistance based upon the failure to assert constructive amendment to the indictment and fatal variance, the state habeas court held:

> "Not every variance in proof from that alleged in the indictment is fatal. . . . The crucial requirements are (1) that the accused be definitely

30

informed as to the charges against him, so that he is able to present his defense, and (2) that he may be protected against another prosecution for the same offense. . . ." Battles v. State, 262 Ga. 415, 420 S.E.2d 303 (1992). Petitioner was sufficiently apprised of the charges to defend against them. There is no evidence that Petitioner's defense suffered because Ms. Manor testified [that] she thought [the weapon] was a pistol. The difference in the weapons does not open Petitioner to the possibility of being prosecuted again for the same offense. The indictment alleging the use of a stun gun and evidence that the armed robbery victim thought it was a pistol is not a fatal variance. Baker v. State, 265 Ga. 572, 458 S.E.2d 850 (1995) (no fatal variance where indictment alleged the use of a handgun and the evidence showed a ri[f]le was used); Nash v. State, 222 Ga. App. 766, 476 S.E.2d 69 (1996) (no fatal variance where charged with throwing a knife at the victim, but the evidence showed he dropped the knife); Mitchell v. State, 218 Ga. App. 330, 461 S.E.2d 292 (1995) (indicted for stabbing with a knife, but evidence that a piece of glass was used is not a fatal variance).

(Resp. Exs. 3 & 6, pp. 14-15).

Based upon the foregoing, the state habeas court determined that constructive amendment to the indictment and fatal variance was not applicable to Petitioner's case and concluded that appellate counsel did not render ineffective assistance by failing to raise this losing argument. The Court finds that the state habeas court's decision in this regard was neither contrary to or an unreasonable application of prevailing Supreme Court precedent. For the same reasons, Petitioner's additional claims regarding constructive amendment and fatal variance, (1)(k), (1)(c), and (4)(b), also lack merit.

In sum, all of Petitioner's claims are either procedurally defaulted or meritless.

31

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the petition for habeas corpus relief be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent. The Court also **REPORTS** and **RECOMMENDS** that Petitioner's motions for summary judgment be **DENIED**. (Doc. nos. 34, 39).

SO REPORTED AND RECOMMENDED this 26th day of October, 2007, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE